UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDRA "ANA" CHERI ROSE, JANET GUZMAN, TIFFANY GRAY a/k/a TIFFANY TOTH, TIFFANY KELLER, GALLIENNE NABILA and STEPHANIE RAO, <br><br> *Plaintiffs*, <br><br> v. <br><br> COSTA DEL SUR ENTERTAINMENT AND RESORTS, LLC d/b/a MOJITOS COUNTRY CLUB; and MICHELLE LEMUS, <br><br> *Defendants.* | **COMPLAINT** <br><br> **(JURY TRIAL DEMANDED)** <br><br> Civil Action No.: |

Plaintiffs ANDRA "ANA" CHERI ROSE, JANET GUZMAN, TIFFANY GRAY A/K/A TIFFANY TOTH, TIFFANY KELLER, GALLIENNE NABILA and STEPHANIE RAO, (collectively, "Plaintiffs"), file this Complaint against COSTA DEL SUR ENTERTAINMENT AND RESORTS, LLC d/b/a MOJITOS COUNTRY CLUB a/k/a MOJITOS and MICHELLE LEMUS (collectively, "Defendants") respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Mojitos Country Club a/k/a Mojitos located in Randolph, Massachusetts ("Mojitos" or "Club" or "Night Club").

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Common Law of Right of

1

Privacy; c) Violation of M.G.L. c. 214 § 3A: Unauthorized Use of Individual's Name, Portrait, or Picture; d) Common Law Right of Publicity; e) Violation of M.G.L. c. 93A § 11: Unfair Trade Practices; f) Defamation; g) Negligence and Respondeat Superior; h) Conversion; i) Unjust Enrichment; and j) Quantum Meruit.

3.     In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.     This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.     Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.     According to publicly available records, Defendant Costa Del Sur Entertainment and Resorts, LLC, is a limited liability company formed under the laws of the state of Massachusetts, with its principal place of business located at 44 Mazzeo Dr, Randolph, Massachusetts, 02368. Upon information and belief, Costa Del Sur Entertainment and Resorts, LLC operates Mojitos, which is located at 44 Mazzeo Dr, Randolph, Massachusetts, 02368.

8.     According to publicly available records, Defendant Michelle Lemus, is an individual operating under the laws of the state of Massachusetts, who is an Owner and/or CEO of Costa Del Sur Entertainment and Resorts, LLC. Upon information and belief, Michelle Lemus can be located at 44 Mazzeo Dr, Randolph, Massachusetts, 02368.

9.     Venue is proper in the United States District Court for the District of Massachusetts because Defendants' principal place of business is located in Randolph, Massachusetts.

10.     A significant portion of the alleged causes of action arose and accrued in Randolph, Massachusetts and the center of gravity for a significant portion of all relevant events alleged in

this complaint is predominately located in Randolph, Massachusetts.

## PARTIES

### *Plaintiffs*

11.     Plaintiff Andra "Ana" Cheri Rose ("Cheri") is a well-known professional model, and a resident of Orange County, California.

12.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

13.     Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

14.     Plaintiff Tiffany Keller ("Keller") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Gallienne Nabila ("Nabila") is a well-known professional model, and a resident of Los Angeles County, California.

16.     Plaintiff Stephanie Rao ("Rao") is a well-known professional model, and a resident of Los Angeles County, California.

### *Defendants*

17.     Defendant, Costa Del Sur Entertainment and Resorts, LLC, is a limited liability company formed under the laws of the state of Massachusetts and registered to conduct business in Massachusetts. During times relevant to this action, Costa Del Sur Entertainment and Resorts, LLC operated Mojitos in Randolph, Massachusetts.

18.     According to publicly available records, Michelle Lemus, in her capacity as principal, owner, manager  and/or CEO of Costa Del Sur Entertainment and Resorts, LLC, maintained operational control over Costa Del Sur Entertainment and Resorts, LLC, including all advertising relating thereto.

19.     Service of process may be perfected upon Defendant Costa Del Sur Entertainment and Resorts, LLC by serving the registered agent for service of process, Michelle Lemus, who can be located at 21 Hillside Lane, Hampden, Massachusetts 01036.

3

## FACTUAL ALLEGATIONS

20. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

21. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

22. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

23. In the case of each Plaintiff, this apparent claim was false.

24. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

25. No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

26. Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

27. Cheri is a published model with companies such as Monster Energy, K&N Filters, Moskova Underwear and Ultimate Armwrestling League. She became a brand ambassador for Shredz. She was featured as a Maxim Instagram Girl of the Week, and was also Playboy's October 2015 Playmate of the Month. She has made appearances in numerous TV series, including Booty

Boot Camp, Nuclear Family, Playmate Playback and many more. She is also the owner of Change Fate Active formerly known as Cheri Fit activewear, which sells fit apparel. Cheri currently has over 12.5 million followers on Instagram, over 31,000 followers on Twitter, and over 105,000 followers on Facebook. [1]

28.     That we know of, Cheri is depicted in the photo in Exhibit "A" to promote Mojitos on its Instagram and Facebook page. This Image was intentionally altered to make it appear that Cheri was either an employee working at Mojitos, that she endorsed the Night Club, or that she was otherwise associated or affiliated with the Night Club.

29.     Cheri has never been employed at Defendant's establishment, has never been hired to endorse Defendants, have never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

30.     Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel\/lifestyle\/fashion vlog on YouTube.

31.     That we know of, Guzman is depicted in the photo in Exhibit "B" to promote Mojitos on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Mojitos, that she endorsed the Night Club, or that she was otherwise associated or affiliated with the Night Club.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

32.     Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendants, have never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

33.     Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368,700 X (formerly known as Twitter) followers.

34.     That we know of, Gray is depicted in the photo in Exhibit "C" to promote Mojitos on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at Mojitos, that she endorsed the Night Club, or that she was otherwise associated or affiliated with the Night Club.

35.     Gray has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

36.     Keller is an American fashion model, Influencer, and world traveler. She has modeled for 10 years in 7 different countries and has traveled to over 25 countries. Keller has been featured in top magazines and on covers of Marie Claire, Maxim, Ocean Drive, and Le Fair to name a few. She has walked the runways of New York, London, Sydney and Miami fashion week.

Keller has been featured on billboards for Resorts World Las Vegas, The Galleria Mall Dallas, I Saw It First, Body Glove, Benefit Cosmetics, Target, Crystals Mall Las Vegas, and Windsor. She has worked with many top brands such as Fashion Nova, Oh Polly, Guess, Revolve, Benefit Cosmetics, Tiger Mist, Boohoo, Jeffrey Star Cosmetics, among so many more. Some of Keller's hotel partners are Amilla Resort Maldives, Makanda Hotel Costa Rica, The Little Nell Aspen, Delano Miami, NoMad Las Vegas, Navutu Dreams Resort Cambodia, Anantara Phuket, and Five Palms Jumeriah Dubai. Keller has over 627,000 social media followers.

37.    That we know of, Keller is depicted in the photo in Exhibit "D" to promote Mojitos on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Keller was either an employee working at Mojitos, that she endorsed the Night Club, or that she was otherwise associated or affiliated with the Night Club.

38.    Keller has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.    Nabila is an actress and model residing in Los Angeles, California. From a young age she participated in pageants, public speaking, dance, community service work, and singing. Nabila has been in the entertainment industry for over a decade working with brands such as Fashion Nova. She is currently signed to Wilhelmina Los Angeles and has a nonprofit geared towards the empowerment and advancement of young women. Nabila has over 2 million social media followers.

40.    That we know of, Nabila is depicted in the photo in Exhibit "E" to promote Mojitos on its Instagram and Facebook page. This Image was intentionally altered to make it appear that Nabila was either an employee working at Mojitos, that she endorsed the Night Club, or that she was otherwise associated or affiliated with the Night Club.

41.    Nabila has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has

7

received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.    Rao who is originally from Miami, FL currently resides in Los Angeles and is an influencer\/model. She is currently representing Fashion Nova and has previously worked for Shein & PrettyLittleThing. She has appeared alongside Kim Kardashian in a Carolina Lemke glasses advertisement as well as other high profile ad campaigns. She has her own website which focuses on providing a fitness journey to her clients and promoting physical, mental, and spiritual wellness. Rao has over 1.1 million Instagram followers.

43.    That we know of, Rao is depicted in the photo in Exhibit "F" to promote Mojitos on its Instagram and Facebook page. This Image was intentionally altered to make it appear that Rao was either an employee working at Mojitos, that she endorsed the Night Club, or that she was otherwise associated or affiliated with the Night Club.

44.    Rao has never been employed at Defendants' establishment, has never been hired to endorse Defendants, has never been otherwise associated or affiliated with Defendants, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business Activities and Misappropriation*

45.    Defendants operate (or operated, during the relevant time period,) a Night Club, where they are (or were) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

46.    Defendants own, operate, and control Mojitos' social media accounts, including its Facebook, Twitter, and Instagram accounts.

47.    Defendants used Mojitos' Facebook, Twitter, and Instagram accounts to promote Mojitos, and to attract patrons.

48.    Defendants did this for their own commercial and financial benefit.

49.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential

clientele that each Plaintiff either worked at Mojitos, endorsed Mojitos, or was otherwise associated or affiliated with Mojitos.

50.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Mojitos to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

51.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Mojitos, and at no point have any of the Plaintiffs ever endorsed Mojitos or otherwise been affiliated or associated with Mojitos.

52.    All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

53.    Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

54.    Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

55.    It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

56.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

57.    Most licenses to use a model's image are for one, two, or three year terms; but

9

almost never is there a "lifetime" term.

***Defendants' Misappropriation of Plaintiffs' Images***

58.   Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Mojitos.

59.   Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

60.   In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Mojitos.

61.   At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

62.   No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

63.   No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Mojitos website, Twitter, Facebook, or Instagram accounts.

64.   Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)

65.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

66.   Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein

67.   Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment , or endorsed Defendants'

businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

68.     Thus, this was done in furtherance of Defendants' commercial benefit.

69.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

70.     Both Plaintiffs and Defendants compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

71.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

72.     Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

73.     Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to

11

mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

74. Defendants knew that their use of P Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

75. Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

76. As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

77. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

78. Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

79. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

## SECOND CAUSE OF ACTION
### (Common Law Right of Privacy)

80.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

81.     As set forth hereon, Defendants have violated each Plaintiffs' common law right to privacy under Massachusetts law.

82.     Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

83.     Defendants invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their image and likeness on Defendants' website or related social media accounts as part of Defendants' advertising campaign.

84.     At all relevant times, Defendants' website and social media accounts were used and operated by Defendants for advertising and trade purposes.

85.     Defendants' website and social media accounts were designed to attract business and generate revenue for Defendants.

86.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

87.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

88.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

89.     Upon information and belief, Defendants' use of

90.     Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendants' business.

91.     At no point did any Defendants ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

92.     Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote their business.

93.     At no point did Defendants ever compensate Plaintiffs for their use of their image and likeness.

94.     No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

### THIRD CAUSE OF ACTION
**(Violation of M.G.L. c. 214 § 3A:  Unauthorized Use of
Individual's Name, Portrait, or Picture)**

95.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

96.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in their image, photo, persona and likeness.

97.     Within Massachusetts, Defendant used  Plaintiffs' image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their night club.

98.     No Plaintiff ever gave Defendants' written consent, authorization, or otherwise granted permission to Defendants to use their image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

99.     Defendants were at all times aware that no Plaintiff ever authorized Defendants to use their image in advertising.

14

100.    As such, Defendants' misappropriation and publication of each Plaintiffs' image in advertising was knowing and willful.

101.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

102.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

103.    Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendants' business.

104.    At no point did Defendants ever compensate Plaintiffs for their use of their image and likeness.

105.    No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

106.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute and given Defendants' willful and knowing misappropriation and publication of each Plaintiffs' image, Plaintiffs are entitled to treble damages

**FOURTH CAUSE OF ACTION**
**(Common Law Right of Publicity)**

107.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

108.    As set forth hereon, each Plaintiff has and had at the time of Plaintiffs' misappropriation a commercial interest in their image, photo, persona and likeness.

15

109.   Said commercial interest was developed by each Plaintiff through their investment of time, effort and money in their career, image, persona and likeness.

110.   As set forth herein, Defendants used each Plaintiffs' image and likeness for commercial purposes by using same in Mojitos advertising.

111.   Defendants did so without any Plaintiffs' consent, written or otherwise.

112.   Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

113.   Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

114.   Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendants' business.

115.   At no point did Defendants ever compensate Plaintiffs for its use of their image and likeness.

116.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

117.   In addition, because Defendants' actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Violation of M.G.L. c. 93A § 11: Unfair Trade Practices)

118.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

16

119.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under M.G.L. c. 93A.

120.    As set forth herein, Defendants embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs worked for, endorsed, or were otherwise associated or affiliated with Defendants' business.

121.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

122.    Defendants' actions occurred primarily and substantially within Massachusetts.

123.    Defendants were at all times aware that no Plaintiff was an entertainer at, had contracted to endorse or promote, or was otherwise associated or affiliated with Defendants' business, but nevertheless published each Plaintiffs' image.

124.    This was done for Defendants' commercial benefit, and to the detriment of Plaintiffs.

125.    Plaintiffs suffered actual money damages by reason of Defendants' unfair and deceptive advertisements by, inter alia, being deprived those monies Defendants should have paid them for their appearance in Defendants' advertisements.

126.    In addition to actual damages, and in light of Defendants' knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, , as provided for under this statute.

127.    In addition to actual damages, to Defendants' unfair and deceptive acts may have the effect of causing such loss to each Plaintiffs' business that Plaintiffs are entitled to injunctive relief.

17

**SIXTH CAUSE OF ACTION**
**(Defamation)**

128.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

129.    As detailed throughout this Complaint, Defendants have published altered image and likeness of Plaintiffs in order to promote their Defendants' business to the general public and potential clientele.

130.    Defendants' publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendants' business, that they endorsed Defendants' business, or that they had some affiliation with Defendants' business.

131.    None of these representations were true.

132.    In publishing Plaintiffs' altered image and likeness, it was Defendants' intention to create a false impression to the general public that Plaintiffs worked at or endorsed Defendants' business.

133.    Defendants were at least negligent in publishing Plaintiffs' image and likeness because they knew, or should have known, that Plaintiffs were not employed by Defendants' business, had no affiliation with Defendants' business, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

134.    In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Defendants' business, had no affiliation with or consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

135.    Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenue for themselves.

136.    Defendants' publication of Plaintiffs' image and likeness constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiffs of having acted in a

18

manner – i.e., working as an entertainer and/or endorsing Defendants' business - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

137.   Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Massachusetts law because said publication would tend to injure each Plaintiff in their trade, business, and profession as a professional model.

138.   This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were professional entertainers and/or promoting as night club, an inference which Defendants' publication of the image and likeness support.

139.   Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to them.

## SEVENTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

140.   Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

141.   Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

142. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

143. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

144. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

145. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

146. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Massachusetts law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of their employees and agents.

147. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

148. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

149. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

150.    Each Plaintiff is, and at all relevant times was, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

151.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

152.    As a result of Defendants' unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

153.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

154.    As set forth in detail above, Defendants published Plaintiffs' image and likeness in order to promote the Defendants' establishment to the general public and potential clientele.

155.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendants .

156.    Defendants' purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

157.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

158.    Plaintiffs are each internationally known models who earntheir livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

159.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

21

160.    Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendants' business, Defendants have not compensated Plaintiffs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to Mojitos;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and S.C. Code Ann. § 39-5-10, *et seq*.;

(e) For such other and further relief as the Court may deem just and proper.


PLAINTIFFS,
By their attorneys,

/s/ Paul Sullivan                                      .
Paul Sullivan, BBO # 634466
Sullivan Law Offices, PC
33 Broad Street, Suite 3092
Providence, RI 02903
Tel: 401-861-9900
psullivan@psullivanlaw.com

*and*

/s/ John V. Golaszewski
John V. Golaszewski

22

New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th fl.
New York, NY 10019
Tel: (646) 872-3178
john@talentrights.law
*Pro Hac Vice Application Forthcoming*

Dated: <u>November 22, 2024</u>.